**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*ex rel.* [UNDER SEAL],<br><br>Plaintiff,<br>v.<br><br>[UNDER SEAL],<br><br>Defendants. | **Civil Action No. ____________**<br><br>**Hon. ______________________**<br><br>**QUI TAM COMPLAINT**<br><br>**FILED UNDER SEAL**<br>**UNDER 31 U.S.C. § 3730(b)(2)**<br><br>**JURY TRIAL DEMANDED** |

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED
2023 DEC 20 P 3: 21

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* AIDAN FORSYTH,<br><br>Plaintiff-Relator,<br><br>v.<br><br>KBW GROUP LLC, HILDRETH ELECTRIC, INC., and AVROHOM WAXMAN,<br><br>Defendants. | **Civil Action No. ____________**<br><br>**Hon. ______________________**<br><br>**QUI TAM COMPLAINT**<br><br>**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br>**JURY TRIAL DEMANDED** |

On behalf of the United States of America (the "United States" or the "Government"), Plaintiff and Relator Aidan Forsyth ("Relator") files this *qui tam* action against Defendants KBW Group LLC ("KBW") and Hildreth Electric, Inc. ("Hildreth") (the "Corporate Defendants"), and Avrohom Waxman ("Waxman") (together, "Defendants"), and alleges as follows:

## INTRODUCTION

1. This is an action to recover treble damages, civil penalties and all other remedies on behalf of the United States of America in connection with the Defendants' materially false and fraudulent applications to the Government for loans under the Paycheck Protection Program ("PPP") in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA").

2. Pursuant to the FCA, Relator seeks to recover, on behalf of the United States of America, damages and civil penalties arising from false or fraudulent claims for payment that Defendants submitted or caused to be submitted to the Federal Government-funded and/or subsidized PPP loan programs.

## SUMMARY OF ALLEGATIONS

3. Defendant Avrohom Waxman, a New Jersey resident, at all times relevant to this Complaint was the manager/agent of Defendant KBW and chairman and agent of Defendant Hildreth.

4. Upon information and belief, Defendant Waxman had a 20% or greater equity interest in each Corporate Defendant.

5. Hildreth was an electrical contractor based out of Lockport, New York. It was owned and run by Thomas Hildreth and other members of the Hildreth family from approximately 1992 until 2020.

6. In or about April 2020, Hildreth obtained a first-draw PPP loan from a Buffalo, New York bank.

7. In or about June 2020, Defendant Waxman incorporated KBW and then purchased Hildreth.

8. Following this purchase, KBW continued conducting Hildreth's business under the name "Hildreth Electric, Inc."

9. In or about March 2021, Hildreth sought and obtained forgiveness of the first-draw loan.

10. Shortly thereafter, KBW submitted a Small Business Administration ("SBA") application for a first-draw PPP loan.

11. Upon information and belief, Waxman prepared or caused to be prepared the loan applications as KBW's authorized representative(s).

12. The loan application reported approximately the same number of employees as Hildreth and used the same North American Industry Classification System (NAICS) business code.

13. KBW applied for this loan through a New Jersey bank, not the Buffalo bank that had issued (and forgiven) Hildreth's first-draw loan.

14. In the application, Defendants falsely stated and certified that KBW had not received another first draw PPP loan. They also expressly acknowledged that submitting a materially false application would violate federal law.

15. In reliance on these false statements and certifications, the New Jersey lender extended a PPP loan to KBW in an amount exceeding $600,000.00.

16. In reliance on Defendants' further false statements and certifications, the lender forgave the PPP loans, the reimbursement for which cost the United States over $600,000.00.

17. Had Defendants been truthful in their statements and certifications to the New Jersey bank, *i.e.* that KBW and Hildreth were essentially the same business, the second loan would never have been issued, because the business had not suffered a revenue decrease sufficient to qualify it for a second-draw loan.

18. Relator files this *qui tam* lawsuit to enable the Government to recover from Defendants the SBA-guaranteed, granted and forgiven monies that were provided to Defendants as the result of their wrongdoing, as well as to recover treble damages and/or penalties.

## JURISDICTION, VENUE, AND SPECIAL REQUIREMENTS

19. This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, under 31 U.S.C. § 3729 of the

False Claims Act, and under 28 U.S.C. § 1345, which provides the United States District Courts with original jurisdiction over all civil actions commenced by the United States of America.

20. In addition, the FCA specifically confers jurisdiction upon the United States District Courts under 31 U.S.C. § 3732. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because the Defendants submitted PPP Loan applications and requests for loan forgiveness to a bank in this District and the individual Defendant is a resident of the District.

21. Venue is proper in this District under 31 U.S.C. § 3732(a) because certain of the acts complained of herein occurred in this District.

22. In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has filed been filed *in camera* and will remain under seal for a period of at least 60 days, and shall not be served on the Defendants until the Court so orders.

23. Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and a written disclosure of substantially all material evidence and material information in his possession contemporaneous with the filing of the Complaint. Relator has complied with this provision by serving copies of the Complaint and such disclosure upon the Honorable Philip R. Sellinger, United States Attorney for the District of New Jersey, and upon the Honorable Merrick B. Garland, Attorney General of the United States.

24. Relator is not aware that the allegations in this Complaint have been publicly disclosed. In any event, this Court has jurisdiction under 31 U.S.C. § 3730(e)(4) because the Relator is an "original source" since he has voluntarily provided his information to Government before filing this Complaint, and has knowledge which is both direct and independent of, and materially adds to, any public disclosures to the extent they may exist.

## PARTIES

25. Plaintiff/Relator Aidan Forsyth resides at 55 West 8th Street, New York, NY 10011.

26. Defendant KBW Group LLC is a limited liability company that was incorporated in the State of New York on or about June 15, 2020. Its principal place of business is located at 5427 Crown Drive in Lockport, New York, 14094. KBW provides electrical contracting and other wiring installation services.

27. Defendant Hildreth Electric, Inc. is a privately-held company that was incorporated in the State of New York on or about December 16, 1992. Its principal place of business is also located at 5427 Crown Drive in Lockport, New York, 14094.

28. Defendant Avrohom Waxman resides at 1004 Madison Ave, Lakewood, NJ 08701. Waxman is the manager/agent of KBW and chairman and registered agent of Hildreth.

## GOVERNING LAWS, REGULATIONS, AND CODES OF CONDUCT

### The False Claims Act

29. Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act. The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010.

30. The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval"; or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim"; or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or

transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(A), (B), (G). Any person found to have violated these provisions or conspired to have violated these provisions is liable for a civil penalty of at least $12,357.00 and up to $27,018.00 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 87 FR 27513, Jan. 30, 2023).

31. The FCA defines the terms "knowing" and "knowingly" to mean that a person (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or acts "in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). The statute provides that "no proof of specific intent to defraud" is required. 31 U.S.C. § 3729(b)(1)(B).

32. The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government – (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

33. The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery. The complaint must be filed under seal without service on any Defendant.

The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

34. In this action, and under well-established precedent, the false and fraudulent nature of Defendants' conduct is informed or measured by their violation of, or failure to comply with, certain statutes and regulations material to the submission of applications for government-subsidized and/or issued small business loans.

**The CARES Act Authorizes Paycheck Protection Program Loans and Economic Injury Disaster Loans and Grants**

35. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Pub. L. 116-136) (the "CARES Act" or the "Act") was enacted in March 2020 to provide emergency financial assistance to individuals and businesses affected by the COVID-19 pandemic. The Act provided the federal Small Business Administration ("SBA") with funding and authority to modify existing loan programs and establish a new loan program to assist small businesses adversely affected by the pandemic.

36. Section 1102 of the CARES Act authorized the SBA to guarantee up to $349 billion in forgivable 7(a) loans to small businesses for job retention and other expenses. This program was called the Paycheck Protection Program ("PPP"). In April 2020, Congress authorized over $300 billion to additionally fund the PPP. In June 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142) was enacted which changed certain provisions of the PPP, including provisions relating to the maturity of loans, the deferral of loan payments, and loan forgiveness.

37. Under the PPP, eligible businesses could obtain *one* SBA-guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage,

and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

38. The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. To obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application (SBA Form 2483) required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.

39. The borrower's authorized representative must certify, among other things, the business's average monthly payroll expenses and number of employees. This information is used to calculate the amount of money the business is eligible to be loaned. The applicant must also submit documentation showing payroll expenses, among other things.

40. All versions of the PPP loan application required the authorized representative to certify that the applicant had not and would not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the SBA, not including the PPP second draw loans.

41. All versions of the application further required the applicant's representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

42. PPP loan applications were processed by participating financial institutions, which served as the lenders. Data from the application, including information about the borrower, the

total amount of the loan, and the listed number of employees, were transmitted by the lender to the SBA in the course of processing the loan. SBA paid processing fees to lenders.

43. Once a borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the participating lender, the lender submitted the application to SBA for an SBA loan number and after receiving that number it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

44. A borrower was required to use PPP loan proceeds only for certain permissible expenses: payroll costs, interest on mortgages, rent and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expenses within a designated period (between eight and 24 weeks from receiving the proceeds) and uses at least 60% of the proceeds for payroll expenses.

## SPECIFIC FRAUD ALLEGATIONS

### Hildreth Applies for and Receives a First-Draw PPP Loan, which is Later Forgiven

45. In or about April 2020, an authorized representative of Hildreth prepared or caused to be prepared an SBA application for a PPP loan (using the original SBA Form 2483 effective April 2, 2020) on behalf of Hildreth to Manufacturers and Traders Trust Company ("M&T"), a federally-insured financial institution based in Buffalo, New York.

46. Hildreth's loan application represented that it was an electrical/wiring installation contractor (NAICS code 239210) with 79 employees.

47. In or about April 2020, an authorized representative of Hildreth submitted or caused to be submitted Hildreth's PPP loan application to M&T.

48. On or about April 28, 2020, M&T issued PPP Loan #8439587203 to Hildreth in the amount of $702,570.67 (the "203 Loan").

49. On or about March 1, 2021, the 203 Loan was forgiven in full, causing the United States to reimburse M&T for the full amount plus interest, costs and fees.

**KBW Applies for and Receives a Second First-Draw PPP Loan, which is Later Forgiven**

50. On or about June 15, 2020, Waxman incorporated KBW as a New York Limited Liability Company.

51. Waxman then purchased Hildreth through KBW.

52. Following this purchase, KBW continued conducting Hildreth's business under the name "Hildreth Electric, Inc."

53. In or about March 2021, shortly after Hildreth had obtained forgiveness of its first-draw PPP loan, Waxman prepared or caused to be prepared an SBA application for a second First Draw PPP loan (using the revised SBA Form 2483 Version 10, effective March 18, 2021) on behalf of KBW to First Commerce Bank ("FCB"), a federally-insured financial institution based in Lakewood, New Jersey.

54. KBW's loan application represented that it was an electrical/wiring installation contractor (NAICS code 239210) with 80 employees.

55. Second-draw PPP loans required that the borrower "demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020."

56. The application required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that

"knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

57. Upon information and belief, Waxman executed KBW's PPP loan application as the company's authorized representative, or caused another person to do so.

58. Upon information and belief, unable to satisfy the requirements to apply for a Second-Draw PPP Loan, Waxman submitted or caused to be submitted an application for a second First-Draw PPP Loan, using the name KBW rather than Hildreth.

59. The First-Draw PPP Loan application required an applicant to certify that it "has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37))."

60. Upon information and belief, Waxman falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

61. In or about March 2021, Waxman submitted or caused to be submitted KBW's second First-Draw PPP loan application to FCB.

62. On or about March 18, 2021, in reliance on Waxman's and KBW's materially false and fraudulent representations and certifications in the loan application, FCB issued PPP Loan #4123908608 to KBW in the amount of $632,589.98 (the "608 Loan").

63. On or about January 21, 2022, the 608 Loan was forgiven in full, causing the United States to reimburse FCB for the full amount plus interest, costs and fees.

**THE GOVERNMENT HAS BEEN DAMAGED AS A RESULT OF**
**DEFENDANTS' CONDUCT**

64. Defendants' materially false statements have caused the federal government to be defrauded of taxpayer funds in the approximate amount of $632,589.98.

**CLAIMS FOR RELIEF**

**COUNT I**

False Claims Act:
Presenting or Causing to be Presented False and Fraudulent Claims
U.S.C. § 3729(a)(1)(A)

65. Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

66. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly presented, and caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

**COUNT II**

False Claims Act:
Making or Using False
Records or Statement to Cause Claims to be Paid
31 U.S.C. § 3729(a)(1)(B)

67. Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

68. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly made, used, or caused to be made or used, false records or statements – *i.e.*, the false representations made or caused to be made by Defendants – material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B).

## COUNT III

False Claims Act: Conspiracy
31 U.S.C. § 3729(a)(1)(C)

69. Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

70. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants conspired with and among each other, and with others, to make or present false or fraudulent claims, and performed one or more overt acts to effect the submission and cause the payment of false or fraudulent claims.

## DEMANDS FOR RELIEF

**WHEREFORE**, Relator, on behalf of the United States Government, demands judgment against the Defendants, ordering that:

A. That Defendants be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729, *et seq.*;

B. That judgment be entered in Relator's favor and against Defendants in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of not less than $12,357.00 or more than $27,018.00 per claim as provided by 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 87 FR 27513, Jan. 30, 2023), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

C. That Defendants be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

D. That judgment be granted for Relator against Defendants for all costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator in the prosecution of this suit; and

E. That Relator be granted such other and further relief as the Court deems just and proper.

**TRIAL BY JURY**

Relator hereby demands a trial by jury as to all issues.

DATED: December 20, 2023

**SPIRO HARRISON & NELSON**

Eric H. Jaso
363 Bloomfield Avenue
Second Floor
Montclair, NJ 07074
(973) 232-0881
ejaso@spiroharrison.com

*Attorneys for Relator*